THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                 CIVIL ACTION NO:

CITY OF WYANDOTTE,

          Defendant,

_____/

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States

and through the undersigned attorneys, acting at the request of the Administrator (the

"Administrator") of the United States Environmental Protection Agency ("EPA"), files this

Complaint and alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action brought by the United States against the City of

Wyandotte, Michigan ("Wyandotte" or "Defendant"), for injunctive relief and the assessment of

civil penalties for violations of Section 113(b) of the Clean Air Act ("CAA" or "Act"), 42 U.S.C.

§ 7413(b), at Wyandotte's Municipal Power Plant (the "Power Plant") located at 2555 Van

Alstyne in Wyandotte, Michigan.  Defendant violated, and continues to violate, the emissions

limits for nitrogen oxide ("NO$_x$"), sulfur dioxide ("SO$_2$") and carbon monoxide ("CO"), and the

visible emission limits, that are set forth in:  (a) Defendant's Title V Operating Permit, issued

pursuant to CAA Title V, 42 U.S.C. §§ 7661-7661f; (b) Defendant's "Permits to Install," issued

pursuant to the Prevention of Significant Deterioration ("PSD") provisions of the Act, as set forth

in CAA Sections 160-169B, 42 U.S.C. §§ 7470-92; (c) the Standards of Performance for New

1

Sources, often referred to as New Source Performance Standards ("NSPS"), as set forth CAA

Section 111, 42 U.S.C. § 7411; and (d) the standards set forth in the State Implementation Plan

("SIP") adopted by the State of Michigan and approved by the EPA pursuant to CAA Section

110, 42 U.S.C. § 7410 ("Michigan SIP").

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over the subject matter of this civil action pursuant to

CAA Section 113(b), 42 U.S.C. § 7413(b), and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.

3.      Venue is proper in this district pursuant to CAA Section 113(b), 42 U.S.C.

§ 7413(b), and 28 U.S.C. §§ 1391(b), (c), and 1395(a), because the violations of the Act giving

rise to this claim occurred and are occurring in Wayne County, Michigan, the location of the

Power Plant, which is operated by Defendant in this District.

## NOTICE

4.      A Notice of Violation/Finding of Violation ("NOV/FOV") issued to Defendant on

May 5, 2006, alleged violations of the Michigan SIP, the PSD and NSPS provisions of the Act,

and CAA Title V.  To the extent applicable, the 30-day period established in 42 U.S.C.

§ 7413(a)(1) between the issuance of the NOV/FOV and commencement of this civil action has

elapsed.

5.      The United States provided notice of the commencement of this action to the State

of Michigan pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), on December 1, 2008.

## DEFENDANT

6.      Defendant City of Wyandotte is a "municipality" and political subdivision of the

State of Michigan located in Wayne County, Michigan.  Defendant is a "person" as defined in

CAA Section 302(e), 42 U.S.C. § 7602(e).

7.      Defendant owns and operates two coal-fired boilers (Units 7 and 8) and one natural gas-fired boiler (Unit 5) at its Power Plant located at 2555 Van Alstyne St., Wyandotte, Wayne County, Michigan.

8.      Defendant is an "owner or operator," as defined in CAA Section 111(a)(5), 42 U.S.C. § 7411(a)(5), of the Power Plant and of the boilers.

## STATUTORY AND REGULATORY BACKGROUND

9.      The Act establishes a regulatory scheme that is designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population.  CAA Section 101(b)(1), 42 U.S.C. § 7401(b)(1).

### The National Ambient Air Quality Standards

10.      CAA Section 109, 42 U.S.C. § 7409, requires the Administrator to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS or "ambient air quality standards") for those air pollutants ("criteria pollutants") for which air quality criteria have been issued pursuant to CAA Section 108, 42 U.S.C. § 7408.  The primary NAAQS are to be adequate to protect the public health with a sufficient margin of safety, and the secondary NAAQS are to be adequate to protect the public welfare from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air.  The NAAQS promulgated by EPA pursuant to this provision are set forth in 40 C.F.R. Part 50.

11.      Under CAA Section 107(d), 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data.  An area that meets the NAAQS for a particular pollutant is an "attainment" area.  An area

that does not meet the NAAQS is a "nonattainment" area.  An area that cannot be classified due to insufficient data is "unclassifiable."

12.     At all times relevant to this Complaint, Defendant's Power Plant has been located in an area that has been designated as attainment for $NO_x$, $SO_2$, CO, and $PM_{10}$ (*i.e.*, particulate matter that is 10 micrometers in diameter or smaller) and has been designated as non-attainment for $PM_{2.5}$ (*i.e.,* particulate matter that is 2.5 micrometers in diameter and smaller).

13.     Pursuant to CAA Section 110, 42 U.S.C. § 7410, each state must adopt and submit to EPA for approval an Implementation Plan that provides for the attainment and maintenance of the NAAQS and that meets other requirements of the Act.  The State of Michigan adopted and submitted to the EPA various regulations that have been approved by EPA and which, taken together, constitute the Implementation Plan for the State of Michigan ("Michigan SIP" or "SIP").

## Prevention of Significant Deterioration

14.     CAA Part C, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration ("PSD") of air quality in those areas that have been designated as either attainment or unclassifiable for purposes of meeting the NAAQS.  The PSD requirements are designed to protect health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources, and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a decision and after public participation in the decision-making process.

15.     CAA Section 161, 42 U.S.C. § 7471, requires that each applicable SIP contain a PSD program.  EPA found Michigan's PSD program deficient on February 7, 1980, and incorporated, by reference, the federal PSD regulations, 40 C.F.R. § 52.21(b)-(w), into the federally-approved Michigan SIP.  Effective October 16, 2008, EPA conditionally approved the

4

Michigan PSD program.  40 C.F.R. § 52.1188.  The federal PSD regulations continue to apply in Michigan during the term of such conditional approval.  *Id.*

16.     CAA Section 165(a), 42 U.S.C. § 7475(a), among other things, prohibits the construction and operation of a "major emitting facility" in an area designated as attainment, unless a permit has been issued that comports with the requirements of Section 165 and the facility employs the best available control technology for each pollutant subject to regulation under the Act that is emitted from the facility.

17.     CAA Section 169(1), 42 U.S.C. § 7479(1), designates fossil-fuel fired steam electric plants of more than two hundred and fifty million British thermal units ("BTUs") per hour heat input and that emit or have the potential to emit one hundred tons per year or more of any pollutant to be "major emitting facilities."

18.     CAA Section 169(3), 42 U.S.C. § 7479(3), defines Best Available Control Technologies ("BACT"), in pertinent part, as "an emission limitation based on the maximum degree of reduction of each pollutant subject to regulation under this chapter emitted from or which results from any major emitting facility, which the permitting authority, on a case-by-case basis, taking into account energy, environmental, and economic impacts and other costs, determines is achievable for such facility . . . ."

19.     EPA's PSD regulations at 40 C.F.R. 52.21(j)(1) provide, "[a] major stationary source or major modification shall meet each applicable emissions limitation under the State Implementation Plan and each applicable emissions standard and standard of performance under 40 CFR Parts 60 and 61."

20.     EPA's PSD regulations at 40 C.F.R. § 52.21(r)(1) provide, "[a]ny owner or operator who constructs or operates a source or modification not in accordance with the

application submitted pursuant to [the PSD regulations] or with the terms of any approval to construct . . . shall be subject to appropriate enforcement action."

21.     Michigan's federally approved SIP establishes requirements for sources of air pollutants, the relevant provisions of which are codified at MICH. ADMIN. CODE r. 336.1201 and r. 336.1301.  MICH. ADMIN. CODE r. 336.1201 requires such sources to apply for and obtain permits prior to constructing, reconstructing or installing any air contaminant source.  Such a permit may be issued subject to any condition necessary to assure compliance with all applicable requirements.  MICH. ADMIN. CODE r. 336.1301 establishes the standards for the density of visible emissions, *i.e.,* opacity, in that state.

<u>**New Source Performance Standards**</u>

22.     CAA Section 111(b)(1)(A), 42 U.S.C. § 7411(b)(1)(A), requires the Administrator to publish a list of categories of stationary sources that emit or may emit any air pollutant.  The list must include any categories of sources which are determined to cause or significantly contribute to air pollution which may endanger public health or welfare.

23.     CAA Section 111(b)(1)(B), 42 U.S.C. § 7411(b)(1)(B), requires the Administrator to promulgate regulations establishing federal standards of performance for new sources of air pollutants within each of these categories.  "New sources" are defined as stationary sources, the construction or modification of which is commenced after the publication of the regulations or proposed regulations prescribing a standard of performance applicable to such source.  42 U.S.C. § 7411(a)(2).  These standards are referred to as New Source Performance Standards ("NSPS").

24.     CAA Section 111(e), 42 U.S.C. § 7411(e), prohibits an owner or operator of a new source from operating that source in violation of an applicable NSPS after the effective date of such NSPS.

25.     Pursuant to CAA Sections 111 and 114, 42 U.S.C. §§ 7411, 7414, EPA promulgated general provisions regarding NSPS.  See 40 C.F.R. Part 60, Subpart A, §§ 60.1 - 60.19.

26.     40 C.F.R. § 60.1 states that the provisions of 40 C.F.R. Part 60 apply to the owner or operator of any stationary source which contains an affected facility, the construction or modification of which is commenced after the publication in Part 60 of any standard (or, if earlier, the date of publication of any proposed standard) applicable to that facility.

27.     An "affected facility" is any apparatus to which a standard of performance is applicable.  40 C.F.R. § 60.2.

28.     40 C.F.R. § 60.7(c) requires each affected facility to report its emissions in excess of the NSPS emission limits, also known as "excess emissions," to the Administrator.  Each affected facility must report the "magnitude of excess emissions," "the date and time of commencement and completion of each time period of excess emissions," and "each period of excess emissions that occurs during startups, shutdowns, and malfunctions of the affected facility."  40 C.F.R. § 60.7(c)(1)-(2).  40 C.F.R. § 60.7(d) allows the submission of summary reports by sources whose excess emissions do not exceed more than one percent of total operating time during the reporting period, or where emission monitors are not functioning for more than five percent of the source's total operating time during the reporting period.  40 C.F.R. § 60.7(d).

29.     40 C.F.R. § 60.11(d) requires that at all times, including periods of startup, shutdown, and malfunction, owners and operators shall, to the extent practicable, maintain and operate any affected facility including associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions.

30.     Pursuant to CAA Section 111(b)(1)(A), 42 U.S.C. § 7411(b)(1)(A), at 40 C.F.R. §§ 60.40-49 (Subpart D), EPA has identified fossil-fuel-fired steam generators as one category of stationary sources that cause, or contribute significantly to, air pollution that may reasonably be anticipated to endanger public health or welfare.

31.     EPA's general NSPS provisions apply to owners or operators of any stationary source that contains an "affected facility" subject to regulation under 40 C.F.R. Part 60.  EPA has also promulgated NSPS for various industrial categories, including fossil-fuel-fired steam generating units and electric utility steam generating units.  NSPS requirements for fossil-fuel-fired steam generators for which construction or modification is commenced after August 17, 1971 (but before September 18, 1978), are codified at 40 C.F.R. Part 60, Subpart D, §§ 60.40-49.  NSPS requirements for electric utility steam generating units for which construction or modification commenced after September 18, 1978 are codified at 40 C.F.R. Part 60, Subpart Da, §§ 60.40Da-52Da.

32.     40 C.F.R. Part 60, Subpart D applies to any "affected facility" that is a "fossil-fuel-fired steam generating unit of more than 73 megawatts (MW) heat input rate (250 million British thermal units per hour (MMBtu/hr)" that "commenced construction or modification after August 17, 1971."  40 C.F.R. § 60.40(a)(1) and (c).  The Power Plant is an "affected facility" with the meaning of 40 C.F.R. Part 60, Subpart Da.

33.     40 C.F.R. Part 60, Subpart Da applies to any "affected facility" that is an "electric utility steam generating unit" that "is capable of combusting more than 73 megawatts (MW) (250 million British thermal units per hour (MMBtu/hr)) heat input of fossil fuel (either alone or in combination with any other fuel)" and "for which construction, modification, or reconstruction is

commenced after September 18, 1978." 40 C.F.R. § 60.40Da(a).  The Power Plant is an "affected facility" within the meaning of 40 C.F.R. Part 60, Subpart Da.

34.    Pursuant to 40 C.F.R. §§ 60.42, 60.43, and 60.44, the owner or operator of a fossil-fuel-fired steam generator subject to 40 C.F.R. Part 60, Subpart D may not cause to be discharged into the atmosphere from any affected facility any gases which contain $NO_x$ or $SO_2$ in excess of applicable emission limitations, or exhibit greater than 20 percent opacity except for one six-minute period per hour of not more than 27 percent opacity.

35.    Subpart D requires that each owner or operator of an affected facility submit an excess emissions report that includes the information required in 40 C.F.R. § 60.7(c). 40 C.F.R. § 60.45(g).

36.    Pursuant to 40 C.F.R. §§ 60.42Da, 60.43Da, and 60.44Da, the owner or operator of an electric steam generating unit subject to Subpart Da may not cause to be discharged into the atmosphere from any affected facility gases that contain $NO_x$ or $SO_2$ in excess of the applicable emission limitations, or that exceed the standards for the density of visible emissions.

37.    Subpart Da requires each affected facility to report its emissions in accordance with the requirements of 40 C.F.R. § 60.51Da.

38.    CAA Section 111(e), 42 U.S.C. § 7411(e), prohibits the operation of any new source in violation of an applicable NSPS.  Thus, a violation of an NSPS is a violation of CAA Section 111(e).

## CAA Title V

39.    CAA Title V, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources, including "major sources."  The purpose of Title V is to ensure that all

"applicable requirements" for compliance with the Act, including PSD, NSPS, and SIP requirements, are collected in one place.

40.     A "major source" for the purposes of Title V is defined as a source with a potential to emit greater than 100 tons per year of any criteria pollutant, 10 tons per year of any single hazardous air pollutant or 25 tons per year of all hazardous pollutants combined.  42 U.S.C. § 7661(2).

41.     Pursuant to CAA Section 502(b), 42 U.S.C. § 7661a(b), EPA promulgated regulations establishing the minimum elements of a Title V permit program to be administered by any air pollution control agency.  57 Fed. Reg. 32,250 (July 21, 1992).  Those regulations are codified at 40 C.F.R. Part 70.

42.     EPA granted full approval of Michigan's Title V permit program, effective November 30, 2001.  40 C.F.R. Part 70, Appendix A.  Michigan's Title V operating permit program is codified at MICH. ADMIN. CODE r. 336.1210 - 336.1218.

43.     CAA Section 502(a), 42 U.S.C. § 7661a(a), and Michigan's Title V operating permit program regulations have at all relevant times made it unlawful for any person to violate any requirement of a permit issued under Title V or to operate a major source except in compliance with a permit issued by a permitting authority under Title V.

44.     CAA Section 504(a), 42 U.S.C. § 7661c(a), EPA's implementing regulations at 40 C.F.R. § 70.6(a)(1), and Michigan's Title V regulations have at all relevant times required that each Title V permit include, among other things, enforceable emission limitations and such other conditions as are necessary to assure compliance with applicable requirements of the Clean Air Act, the requirements of the applicable SIP (including any applicable PSD requirement to comply with an emission rate that meets BACT), and any applicable NSPS requirements.

45.     Michigan's Title V operating permit regulations specify that all terms and conditions of a Title V operating permit that are designated in the permit as federally enforceable are enforceable by EPA under the provisions of the CAA.

46.     CAA Section 503(c), 42 U.S.C. § 7661b(c), EPA's Title V regulations at 40 C.F.R. §§ 70.5(a) and (c), and the pertinent provisions of Michigan's Title V regulations have, at all relevant times, required that any application for a Title V permit be complete and include, among other things, the citation and description of all requirements applicable to the source and a description and compliance plan for requirements for which the source is not in compliance.

## MICHIGAN SIP

47.     Violations of 40 C.F.R. § 52.21(b) through (w) are also violations of the Michigan SIP.

48.     EPA approved MICH. ADMIN. CODE r. 336.1201 as part of the federally enforceable Michigan SIP on May 6, 1980.  45 Fed. Reg. 29790.

49.     Rule 336.1201 states, among other things, "a person shall not install, construct, reconstruct, relocate, or modify any process" which may be a source of air contaminant, until "a permit to install . . . is issued by the department."  An application for a permit to install may be approved subject to any condition, specified in writing, necessary to assure compliance with applicable regulations.  MICH. ADMIN. CODE r. 336.1201

50.     EPA approved Rule 336.1301 as part of the federally enforceable Michigan SIP on June 11, 1992.  The rule became effective July 13, 1992.  57 Fed. Reg. 24,752 (June 11, 1992).

51.     Rule 336.1301 provides, in part, that "a person shall not cause or permit to be discharged into the outer air . . . a visible emission of a density greater than . . . a limit specified as a condition of a permit to install or permit to operate."  MICH. ADMIN. CODE r. 336.1301(1).

11

52.     Pursuant to CAA Section 113(a) and (b), 42 U.S.C. § 7413(a) and (b), SIP requirements that EPA has approved are federally enforceable.  40 C.F.R. § 52.23 states, in part, "failure to comply with any approved regulatory provision of a SIP renders the person or the governmental entity so failing to comply in violation of a requirement of an applicable implementation plan and subject to enforcement action" under CAA Section 113, 42 U.S.C. § 7413.  40 C.F.R. § 52.23.

## THE POWER PLANT

53.     At all times relevant to this civil action, Defendant has been, and continues to be, the owner and operator of the Power Plant.

54.     The Power Plant is a nominal 80 megawatt ("MW") municipal utility that operates three coal-fired and/or gas-fired boilers (Units 5, 7, and 8).

55.     Unit 5 is a 22.5 MW natural gas-fired boiler; it is not involved in this enforcement action.

56.     Unit 7 is a 32.5 MW pulverized coal-fired boiler with the capacity to use natural gas and/or propane as fuel.

57.     Unit 7 has a design heat input capacity of greater than 250 mmBtu/hr.

58.     Unit 7 is an "affected facility" under 40 C.F.R. § 60.2.

59.     Unit 8 is a 25 MW coal-fired circulating fluidized bed boiler that burns coal and/or tire derived fuel ("TDF") as fuel.

60.     Unit 8 has a design heat input capacity of greater than 250 mmBtu/hr.

61.     Unit 8 is an "affected facility" under 40 C.F.R. § 60.2.

62.     Unit 8 burns natural gas during startup.

63.     The Power Plant is a "stationary source" within the meaning of CAA Section 302(z), 42 U.S.C. § 7602(z).

64.     The Power Plant emits air pollutants and air contaminants within the meaning of the CAA and the Michigan SIP through three stacks.

65.     Each of the stacks is equipped with a Continuous Opacity Monitoring System ("COMS") that continuously monitors opacity.

66.     Each of the stacks is also equipped with a Continuous Emissions Monitoring Systems ("CEMS") that measures emissions of $SO_2$, $NO_x$, and/or CO.

67.     The Power Plant is a "major source" under Title V because, among other things, it has the potential to emit PM, $SO_2$, $NO_x$ and CO in excess of 100 tons per year.

68.     Because the Power Plant is a major source under Title V, Defendant is required to obtain and operate in compliance with a Title V permit.

69.     At all times pertinent to this enforcement action, the Power Plant has been and continues to be a "major stationary source" and a "stationary source" under the Act and regulations as approved into the Michigan SIP, and Defendant operated "affected facilities" under NSPS.

70.     At all times relevant to this enforcement action, the Power Plant has been and continues to be a "major emitting facility" within the meaning of CAA Section 169(1), 42 U.S.C. § 7479(1), and a "major source" within the meaning of CAA Title V and the Michigan Title V regulations.

## UNIT 7 PERMIT REQUIREMENTS

71.     The NSPS require owners and operators of affected facilities, including Unit 7 of the Power Plant, to comply with a visible emission limit of no greater than 20 percent opacity except for one six-minute period per hour of not more than 27 percent opacity.  40 C.F.R. § 60.42(a)(2).

72.     The Michigan SIP, at MICH. ADMIN. CODE r. 336.1301(1)(a), requires Defendant to comply with a visible emission limit at Unit 7 of no greater than 20 percent opacity except for one six-minute period per hour of not more than 27 percent opacity.

73.     Defendant's Title V Operating Permit establishes a limit on visible emissions at Unit 7 of no greater than 20 percent opacity except for one six-minute period per hour of not more than 27 percent opacity

## UNIT 8 PERMIT REQUIREMENTS

74.     Michigan issued Defendant a PSD construction permit in 1998 for Unit 8 that included emission limitations for opacity, $NO_x$, $SO_2$, and CO.  Michigan renewed the permit on June 10, 2003, September 22, 2003, and May 26, 2005.

75.     Defendant's New Source Review Permit to Install No. 253-98C, dated September 22, 2003:

a.  establishes a limit on visible emissions at Unit 8 of no greater than 10 percent, on average, during a six-minute period;

b.  prohibits Defendant from exceeding an emission limit for $SO_2$ of 0.496 lbs./MMBtu as a one hour average at Unit 8;

c.  prohibits Defendant from exceeding an emission limit for $NO_x$ of 0.40 lbs./MMBtu as a one-hour average at Unit 8; and

14

d.  prohibits Defendant from exceeding an emission limit for CO of 0.24 lbs./MMBtu as a one-hour average at Unit 8.

76.     Defendant's New Source Review Permit to Install, No. 253-98D, dated May 26, 2005:

a.  establishes a limit on visible emissions at Unit 8 of no greater than 10 percent, on average, during a six-minute period;

b.  prohibits Defendant from exceeding an emission limit for $SO_2$ of 0.496 lbs./MMBtu as a 24 hour average at Unit 8;

c.  prohibits Defendant from exceeding an emission limit for $NO_x$ of 0.40 lbs./MMBtu as a 24-hour average at Unit 8; and

d.  prohibits Defendant from exceeding an emission limit for CO of 0.24 lbs./MMBtu as a 24-hour average at Unit 8.

## PERMIT REQUIREMENTS APPLICABLE TO UNIT 7 AND UNIT 8

77.     Michigan issued Defendant a final Title V permit, Permit No. 199600303, on November 3, 2003.  That permit was revised on June 1, 2004, and June 12, 2007.  Part E of Defendant's Title V permit includes the NSPS emission limits for Unit 7 and the PSD BACT limits for Unit 8, among other requirements.  Since the NSPS and PSD limits are incorporated into Defendant's Title V permit, any violations of NSPS and/or PSD are also violations of Defendant's Title V permit, CAA Title V, EPA's Title V regulations, and Michigan's federally approved Title V regulations.

## ENFORCEMENT PROVISIONS

78.     CAA Section 113(a)(1) and (3), 42 U.S.C. § 7413(a)(1) and (3), provides that the Administrator may bring a civil action in accordance with CAA Section 113(b) whenever, on the

basis of information available to the Administrator, the Administrator finds that any person has violated or is in violation of any requirement or prohibition of, among other things:  (1) the PSD requirements of CAA Section 165(a), 42 U.S.C. § 7475(a); (2) the NSPS provisions set forth in CAA Section 111, 42 U.S.C. § 7411; (3) the SIP of any State, including Michigan, or any permit issued thereunder, and (4) CAA Title V, 42 U.S.C. §§ 7661-7661f, or any rule or permit issued thereunder.

79.    CAA 113(b), 42 U.S.C. § 7413(b), authorizes the Administrator to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty against any person whenever such person has violated, or is in violation of, among other things, the requirements or prohibitions described in preceding Paragraph No. 78.

80.    Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note: Pub. L. No. 101-410, 104 Stat. 890 (1990)), as amended by the Debt Collection Improvements Act of 1996 (31 U.S.C. § 3701 note: Pub. L. No. 104-134, 110 Stat. 1321 (1996)), EPA promulgated the Civil Monetary Penalty Inflation Adjustment Rule.  Under that rule, EPA may seek civil penalties of up to $27,500 per day for each violation of the Clean Air Act or implementing regulations or permits, occurring after January 30, 1997 through March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 through January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.  *See* 61 Fed. Reg. 69,364 (Dec. 31, 1996); 69 Fed. Reg. 7,121 (Feb. 13, 2004); 73 Fed. Reg. 75,345 (Dec. 11, 2008).

## FIRST CLAIM FOR RELIEF
### (Opacity Violations at Unit 7)

81.    Paragraphs 1 through 80 are incorporated herein by reference.

82.     On numerous occasions since at least January 2004, at Unit 7, Defendant has exceed and at times continues to exceed 20 percent opacity except for one six-minute period per hour of not more than 27 percent opacity.

83.     Defendant's violations of the visible emission limit at Unit 7 constitute violations of Defendant's Title V Operating Permit; Michigan's Title V regulations; the NSPS regulations; the Michigan SIP; CAA Sections 502(a) and 504(a), 42 U.S.C. §§ 7661a(a) and 7661c(a); and EPA's Title V regulations.

84.     Unless restrained by an order of this Court, the violations alleged in this Claim for Relief will continue.

85.     As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations alleged in this Claim for Relief subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each violation of the Clean Air Act or implementing regulations or permits, occurring after January 30, 1997 through March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 through January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.  *See* 61 Fed. Reg. 69,364 (Dec. 31, 1996); 69 Fed. Reg. 7,121 (Feb. 13, 2004); 73 Fed. Reg. 75,345 (Dec. 11, 2008).

## SECOND CLAIM FOR RELIEF
### (Opacity Violations at Unit 8)

86.     Paragraphs 1 through 80 are incorporated herein by reference.

87.     On numerous occasions since at least January 2004, at Unit 8, Defendant has violated and continues to violate the limit on visible emissions of no greater than 10 percent, on average, during a six-minute period.

88.     Defendant's violations of the 10 percent opacity limit for Unit 8 constitute violations of Defendant's Title V Operating Permit; Michigan's Title V regulations; Defendant's

New Source Review Permits to Install Nos. 253-98C and 253-98D; the PSD regulations at 40 C.F.R. § 52.21(j); the Michigan SIP; CAA Sections 502(a) and 504(a), 42 U.S.C. §§ 7661a (a) and 7661c(a); and EPA's Title V regulations.

89.     Unless restrained by an order of this Court, the violations alleged in this Claim for Relief will continue.

90.     As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each violation of the Clean Air Act or implementing regulations or permits, occurring after January 30, 1997 through March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 through January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.  *See* 61 Fed. Reg. 69,364 (Dec. 31, 1996); 69 Fed. Reg. 7,121 (Feb. 13, 2004); 73 Fed. Reg. 75,345 (Dec. 11, 2008).

## THIRD CLAIM FOR RELIEF
### (SO$_2$ Emissions Violations at Unit 8)

91.     Paragraphs 1 through 80 are incorporated herein by reference.

92.     On numerous occasions since at least January 2004, at Unit 8, Defendant has violated and continues to violate the applicable SO$_2$ emission limit of 0.496 lbs./MMBtu at Unit 8.

93.     Defendant's violations of the SO$_2$ emission limit of 0.496 lbs./MMBtu at Unit 8 constitute violations of Defendant's Title V Operating Permit; Michigan's Title V regulations; Defendant's New Source Review Permits to Install Nos. 253-98C and 253-98D and Permit to Install No. 253-98B; the PSD regulations at 40 C.F.R. § 52.21(j); the Michigan SIP; CAA Sections 502(a) and 504(a), 42 U.S.C. §§ 7661a(a) and 7661c(a); and EPA's Title V regulations.

94.     Unless restrained by an Order of this Court, the violations alleged in this Claim for Relief will continue.

95.     As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth in this Claim for Relief subject Defendant to injunctive relief and civil penalties of up to $.27,500 per day for each violation of the Clean Air Act or implementing regulations or permits, occurring after January 30, 1997 through March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 through January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.  *See* 61 Fed. Reg. 69,364 (Dec. 31, 1996); 69 Fed. Reg. 7,121 (Feb. 13, 2004); 73 Fed. Reg. 75,345 (Dec. 11, 2008).

**FOURTH CLAIM FOR RELIEF**
**$NO_x$ Emissions Violations at Unit 8**

96.     Paragraphs 1 through 80 are incorporated herein by reference.

97.     On numerous occasions since at least January 2004, at Unit 8, Defendant has violated and continues to violate the emission limit for $NO_x$ of 0.40 lbs./MMBtu as a one-hour average.

98.     Defendant's violations of the $NO_x$ emission limit of 0.40 lbs./MMBtu at Unit 8 constitute violations of Defendant's Title V Operating Permit; Michigan's Title V regulations; Defendant's New Source Review Permits to Install Nos. 253-98C and 253-98D; the PSD regulations at 40 C.F.R. § 52.21(j); the Michigan SIP; CAA Sections 502(a) and 504(a), 42 U.S.C. §§ 7661a(a) and 7661c(a); and EPA's Title V regulations.

99.     Unless restrained by an Order of this Court, the violations alleged in this Claim for Relief will continue.

100.     As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth in this Claim for Relief subject Defendant to injunctive relief and civil penalties of up to $ 27,500

per day for each violation of the Clean Air Act or implementing regulations or permits, occurring after January 30, 1997 through March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 through January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.  *See* 61 Fed. Reg. 69,364 (Dec. 31, 1996); 69 Fed. Reg. 7,121 (Feb. 13, 2004); 73 Fed. Reg. 75,345 (Dec. 11, 2008).

## FIFTH CLAIM FOR RELIEF
### CO Emissions Violations at Unit 8

101.     Paragraphs 1 through 80 are incorporated herein by reference.

102.     On numerous occasions since at least January 2004, at Unit 8, Defendant has violated and continues to violate the emission limit for CO of 0.24 lbs./MMBtu as a 24-hour average.

103.     Defendant's violations of the CO emission limit of 0.24 lbs./MMBtu at Unit 8 constitute violations of Defendant's Title V Operating Permit; Michigan's Title V regulations; Defendant's New Source Review Permits to Install 253-98C and 253-98D; the PSD regulations at 40 C.F.R. § 52.21(j); the Michigan SIP; CAA Sections 502(a) and 504, 42 U.S.C. §§ 7661a(a) and 7661c(a); and EPA's Title V regulations.

104.     Unless restrained by an Order of this Court, the violations alleged in this Claim for Relief will continue.

105.     As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth in this Claim for Relief subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each violation of the Clean Air Act or implementing regulations or permits, occurring after January 30, 1997 through March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 through January 12, 2009, and $37,500 per day for each violation occurring after

20

January 12, 2009. *See* 61 Fed. Reg. 69,364 (Dec. 31, 1996); 69 Fed. Reg. 7,121 (Feb. 13, 2004); 73 Fed. Reg. 75,345 (Dec. 11, 2008).

## SIXTH CLAIM FOR RELIEF
### (Failure to Operate Affected Facilities in a Manner Consistent With Good Air Pollution Control Practice for Minimizing Emissions)

106.     Paragraphs 1 through 80 are incorporated herein by reference.

107.     Unit 7 and Unit 8 is each subject to the New Source Performance Standards General Provisions, NSPS Subpart A, including the requirements of 40 C.F.R. § 60.11(d).

108.     Under circumstances that did not represent good air pollution practice for minimizing emissions, Defendant has at times relevant to this Complaint violated the opacity standards at Unit 7, and at Unit 8 has violated the visible emission standards, and has exceeded the emission limitations of $SO_2$, $NO_x$, and CO, in violation of 40 C.F.R. § 60.11(d).

109.     Unless restrained by an Order of this Court, these violations of the Clean Air Act and the applicable NSPS regulations will continue.

110.     As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each violation of the Clean Air Act or implementing regulations or permits, occurring after January 30, 1997 through March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 through January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009. *See* 61 Fed. Reg. 69,364 (Dec. 31, 1996); 69 Fed. Reg. 7,121 (Feb. 13, 2004); 73 Fed. Reg. 75,345 (Dec. 11, 2008).

## SEVENTH CLAIM FOR RELIEF
### (Reporting Violations at Unit 7)

111.     Paragraphs 1 through 80 are incorporated herein by reference.

112.    Defendant's Title V Operating Permit requires that Defendant report its excess emissions at Unit 7 each calendar quarter in accordance with 40 C.F.R. § 60.7(c).

113.    Where the duration of excess emissions for a given pollutant exceeds one percent of the total operating time during the quarterly reporting period, 40 C.F.R. § 60.7(c)(1) requires Defendant to report "the magnitude of excess emissions" and the "the date and time of commencement and completion of each time period of excess emissions."  Defendant must also identify "each period of excess emissions that occurs during startups, shutdowns, and malfunctions of the affected facility."  40 C.F.R. § 60.7(c)(2).

114.    On numerous instances since at least 2004, Defendant failed to report the magnitude of its excess visible emissions, and its excess emissions of $NO_x$ and/or $SO_2$, from Unit 7 in its quarterly excess emission reports in accordance with the requirements of 40 C.F.R. § 60.7(c).  Defendant also failed to report the date and time of commencement and completion of each time period of excess visible emissions, and its excess emissions of $NO_x$, and/or $SO_2$, and each period of excess emissions from Unit 7 that occurred during startup, shutdown, and malfunction.

115.    On numerous instances since at least 2004, Defendant failed to satisfy the reporting requirements applicable to Unit 7 contained in 40 C.F.R. § 60.7(c).

116.    Defendant's violations of the reporting requirements for Unit 7 constitute violations of Defendant's Title V Operating Permit; CAA Sections 502(a) and 504(a), 42 U.S.C. §§ 7661a(a) and 7661c(a); EPA's Title V regulations; Michigan's Title V regulations; and 40 C.F.R. § 60.7(c).

117.    Unless restrained by an order of this Court, the violations alleged in this Claim for Relief will continue.

118.     As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each violation of the Clean Air Act or implementing regulations or permits, occurring after January 30, 1997 through March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 through January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.  *See* 61 Fed. Reg. 69,364 (Dec. 31, 1996); 69 Fed. Reg. 7,121 (Feb. 13, 2004); 73 Fed. Reg. 75,345 (Dec. 11, 2008).

## EIGHTH CLAIM FOR RELIEF
### (Reporting Violations at Unit 8)

119.     Paragraphs 1 through 80 are incorporated herein by reference.

120.     Defendant's Title V Operating Permit requires that Defendant report its excess emissions at Unit 8 each calendar quarter in accordance with 40 C.F.R. § 60.7(c).

121.     Where the duration of excess emissions for a given pollutant exceeds one percent of the total operating time during the quarterly reporting period, 40 C.F.R. § 60.7(c)(1) requires Defendant to report "the magnitude of excess emissions" and the "the date and time of commencement and completion of each time period of excess emissions."  Defendant must also identify "each period of excess emissions that occurs during startups, shutdowns, and malfunctions of the affected facility."  40 C.F.R. § 60.7(c)(2).

122.     On numerous instances since at least 2004, Defendant failed to satisfy the reporting requirements contained in 40 C.F.R. § 60.7(c) applicable to Unit 8.

123.     Defendant's violations of the reporting requirements for Unit 8 are violations of Defendant's Title V Operating Permit; Sections 502(a) and 504(a) of the CAA, 42 U.S.C. §§ 7661a(a) and 7661c(a); EPA's Title V regulations; Michigan's Title V regulations; and 40 C.F.R. § 60.7(c).

124.     Unless restrained by an order of this Court, the violations alleged in this Claim for Relief will continue.

125.     As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth in this Claim for Relief subject Defendant to injunctive relief and civil penalties of up to 27,500 per day for each violation of the Clean Air Act or implementing regulations or permits, occurring after January 30, 1997 through March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 through January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.  *See* 61 Fed. Reg. 69,364 (Dec. 31, 1996); 69 Fed. Reg. 7,121 (Feb. 13, 2004); 73 Fed. Reg. 75,345 (Dec. 11, 2008).

## PRAYER FOR RELIEF

WHEREFORE, based on all of the allegations set forth above, Plaintiff, the United States of America, respectfully requests that this Court:

1.     Order Defendant to take all actions necessary to comply with emission limits and the terms of its Title V permit;

2.     Order Defendant to comply with the Act, and all implementing regulations, including, but not limited to the Michigan SIP, the PSD regulations, Title V, and the NSPS;

3.     Permanently enjoin Defendant from operating the Power Plant except in accordance with the Act and any applicable regulatory requirements;

4.     Order Defendant to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Act alleged above;

126.     Assess a civil penalty against Defendant for all alleged violations of up to $27,500 per day for each violation of the Clean Air Act or implementing regulations or permits, occurring after January 30, 1997 through March 15, 2004, $32,500 per day for each violation occurring after

March 15, 2004 through January 12, 2009, and $37,500 per day for each violation occurring after

January 12, 2009.  *See* 61 Fed. Reg. 69,364 (Dec. 31, 1996); 69 Fed. Reg. 7,121 (Feb. 13, 2004);

73 Fed. Reg. 75,345 (Dec. 11, 2008).

    5.      Award Plaintiff its costs of this action; and,

    6.      Grant such other relief as the Court deems just and proper.

                        Respectfully submitted,

                        W. BENJAMIN FISHEROW
                        Deputy Chief
                        Environmental Enforcement Section
                        Environment and Natural Resources
                          Division
                        United States Department of Justice

                        GREGORY L. SUKYS
                        Senior Attorney
                        Environmental Enforcement Section
                        Environment and Natural Resources
                          Division
                        P.O. Box 7611
                        Washington, D.C. 20044-7611
                        Tele. No. 202/ 514-2068
                        Fax. No. 202/616-6584

*Complaint in United States v. City of Wyandotte:*

BARBARA L. MCQUADE
United States Attorney
Eastern District of Michigan

 s/Ellen Christensen
ELLEN CHRISTENSEN
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan   48226
(313) 226-9112
P29574

OF COUNSEL:

SABRINA ARGENTIERI
Associate Regional Counsel
U.S. EPA, Region 5
77 West Jackson Boulevard
Chicago, Illinois 60604-3590