THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

       Plaintiff,

   v.                                CIVIL ACTION NO:

CITY OF WYANDOTTE,

       Defendant.

_____/

## Table of Contents

I.      JURISDICTION AND VENUE ................................................................................ 2

II.     APPLICABILITY ................................................................................................... 3

III.    DEFINITIONS ........................................................................................................ 4

IV.     CIVIL PENALTY ................................................................................................... 9

V.      COMPLIANCE REQUIREMENTS ....................................................................... 9

        A. Phase I Compliance Requirements. .................................................... 11

        B. Phase II Compliance Requirements. ................................................... 13

VI.     SUPPLEMENTAL ENVIRONMENTAL PROJECT ........................................ 21

VII.    REVIEW AND APPROVAL OF SUBMITTALS ............................................. 23

VIII.   PERMITS ............................................................................................................. 25

IX.     REPORTING REQUIREMENTS ....................................................................... 25

X.      STIPULATED PENALTIES ................................................................................ 28

XI.     FORCE MAJEURE ............................................................................................. 31

XII.    DISPUTE RESOLUTION ................................................................................... 33

XIII.   INFORMATION COLLECTION AND RETENTION ...................................... 36

XIV.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS .......................... 38

XV.     COSTS ................................................................................................................. 40

XVI.    NOTICES ............................................................................................................. 40

XVII.   EFFECTIVE DATE ............................................................................................. 42

XVIII.  RETENTION OF JURISDICTION ..................................................................... 42

XIX.    MODIFICATION ................................................................................................. 42

i

XX.     TERMINATION ................................................................................................. 43

XXI.    PUBLIC PARTICIPATION ............................................................................... 44

XXII.   SIGNATORIES/SERVICE.................................................................................. 44

XXIII. INTEGRATION .................................................................................................. 45

XXIV. FINAL JUDGMENT ........................................................................................... 45

APPENDIX

WHEREAS, concurrently with the lodging of this Consent Decree, Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), filed a Complaint in this action pursuant to Section 113(b) of the Clean Air Act  ("CAA," "the Act"), 42 U.S.C. § 7413(b), alleging that the Defendant City of Wyandotte ("Defendant" or "Wyandotte") violated the Act at the City of Wyandotte Municipal Power Plant (the "Facility") in Wyandotte, Michigan.

WHEREAS, the Complaint seeks injunctive relief and the assessment of civil penalties for alleged violations of the emissions limits and reporting requirements for opacity, $NO_x$, $SO_2$, and CO at the Facility that are set forth in: Wyandotte's Title V Operating Permit, issued pursuant to Title V of the CAA, 42 U.S.C. § 7661 *et seq.*; Wyandotte's Permits to Install, issued pursuant to the Prevention of Significant Deterioration ("PSD") provisions of the Act, 42 U.S.C. § 7470-92; the Standards of Performance for New Sources, often referred to as New Source Performance Standards ("NSPS"), as set forth 42 U.S.C. § 7411; and standards set forth in the Michigan State Implementation Plan ("SIP") adopted by the State of Michigan and approved by the EPA pursuant to Section 110 of the Act, 42 U.S.C. § 7410.

WHEREAS, Wyandotte does not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

WHEREAS, Wyandotte has cooperated with the United States in the resolution of this matter.

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

1

WHEREAS, the Parties anticipate that compliance with the requirements set forth in this Consent Decree, including the requirements to install additional controls at the Facility and to perform a Supplemental Environmental Project, will achieve continuous compliance with applicable emissions limits.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I of this Consent Decree (Jurisdiction and Venue), and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. <u>JURISDICTION AND VENUE</u>

1.      The Court has jurisdiction over the subject matter of this civil action pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.  Venue is proper in this district pursuant to Section 113(b) of the CAA, 42 U.S.C. §7413(b) and 28 U.S.C. §§ 1391(b), (c), and 1395(a), because the violations alleged in the Complaint occurred and are occurring in Wayne County, Michigan, the location of the Facility, which is operated by Wyandotte in this District.  For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and any such action and over Defendant and consents to venue in this judicial district.

2.      For purposes of this Consent Decree only, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Section 113 of the Act.

2

## II. <u>APPLICABILITY</u>

3.      The obligations of this Consent Decree apply to and are binding upon the United States and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

4.      No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve the Defendant of its obligation to ensure that the terms of the Decree are implemented, unless (a) the transferee agrees to undertake the obligations required by this Decree and to be substituted for the Defendant as a Party under the Decree and thus be bound by the terms thereof, and (b) the United States consents to relieve Defendant of its obligations.  At least 60 Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 5, the United States Attorney for the Eastern District of Michigan, and the United States Department of Justice, in accordance with Section XVI of this Decree (Notices).  Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

5.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III.  DEFINITIONS

7.      Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.      "Air-Side Soot Blower" shall mean a soot blower to be installed on the air side of the air heater at Unit 7 that blows fly ash dislodged from the duct work back into the boiler at Unit 7;

b.      "Baghouse" shall mean a pollution control device designed to reduce emissions of particulate matter from the Facility's boiler exhaust through the use of filter bags;

c.      "Baghouse Upgrade Analysis" shall mean the written technical study, analysis, review, and recommendation for improvements to the existing Baghouse at Unit 8 at the Facility to improve the Baghouse's capacity to remove PM and reduce opacity to achieve and maintain continuous compliance with the requirements of the Title V Renewable Operating Permit;

d.      "Complaint" shall mean the complaint filed by the United States in this action;

e.      "Consent Decree" or "Decree" shall mean this Decree;

4

f.      "Date of Lodging" shall mean the date the Consent Decree is presented for

lodging to the Clerk of Court for the United States District Court for the Eastern District of

Michigan;

g.      "Day" shall mean a calendar day unless expressly stated to be a business

day.  In computing any period of time under this Consent Decree, where the last day would fall

on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the

next business day;

h.      "Defendant" shall mean the City of Wyandotte;

i.      "Dry Sorbent Injection System" shall mean a technology for injecting a

dry or semi-dry alkaline reagent into the boiler gas stream to achieve the reduction of $SO_2$

emissions;

j.      "Effective Date" shall have the definition provided in Section XVII;

k.      "EPA" shall mean the United States Environmental Protection Agency

and any of its successor departments or agencies;

l.      "Electrostatic Precipitator" or "ESP" shall mean a pollution control device

that uses electrostatic charge to remove PM;

m.      "Excess Emission Reports" shall mean the reports that Defendant is

required to submit under Table E-1.2, Section IV and Table E-1.3, Section IV of the Title V

Renewable Operating Permit and the reports required under 40 C.F.R. § 60.7(c);

n.      "Facility" shall mean the Wyandotte Municipal Power Plant owned and

operated by the Defendant and located at 2555 VanAlstyne Street  in Wyandotte, Michigan,

48192;

5

o.      "Lime Injection System Upgrade Analysis" shall mean the written technical study, analysis, and review of the existing  lime injection system at Unit 8 at the Facility required by Subsection V.B. of this Decree, as well as the analysis' recommendations for improving the lime injection system's capacity to remove $SO_2$ and achieve and maintain continuous compliance with certain requirements of the Title V Renewable Operating Permit;

p.      "Low $NO_x$ Burner" shall mean a control technology involving a burner design which optimizes staged combustion within the flame zone of  a burner to minimize $NO_x$ formation, to produce a stable flame in a boiler, and to reduce $NO_x$ emissions to the atmosphere;

q.      "Malfunction" shall have the meaning in 40 C.F.R. § 60.2;

r.      "New Source Review Permit to Install" shall mean the New Source Review Permit to Install No. 253-98D, issued to the Facility by the Michigan Department of Environmental Quality on May 26, 2005, including any subsequent amendments or modifications after May 26, 2005;

s.      "$NO_x$" shall mean oxides of nitrogen, measured in accordance with the provisions of the Title V Renewable Operating Permit;

t.      "PM" shall mean particulate matter;

u.      "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

v.      "Parties" shall mean the United States and Defendant;

w.      "Section" shall mean a portion of this Decree identified by a Roman numeral;

6

x.      "SNCR" shall mean Selective Non-Catalytic Reduction, which is a pollution control system that employs ammonia-based reagent injection for the purpose of reducing $NO_x$ emissions;

y.      "Shutdown" shall mean the cessation of operation of Unit 7 or Unit 8 as part of an outage;

z.      "Separated Over-Fire Air" shall mean a control technology that introduces air into a boiler above the combustion zone for the purpose of reducing $NO_x$ emissions; Startup" shall mean the setting into operation of Unit 7 or Unit 8 immediately after an outage;

aa.      "$SO_2$" shall mean the pollutant sulfur dioxide, measured in accordance with the provisions of the Title V Renewable Operating Permit;

bb.      "Title V Renewable Operating Permit" shall mean the Title V Permit RO Permit Number 199600303b, issued to the Facility by the Michigan Department of Environmental Quality with the effective date of November 3, 2003 and as amended on March 8, 2004 and June 12, 2007 and shall include all subsequent renewals and revisions to such permit;

cc.      "Unit 7 Opacity Exceedance" shall, for the purposes of Section V.B. of this Decree only, mean any  six-minute block opacity average, including all periods of Startup, Shutdown, and Malfunction, as determined by a the continuous opacity monitoring system ("COMS") for Unit 7, which is greater than 20 percent, except for one six-minute exceedance per hour which is greater than 20 percent and less than 27 percent;

dd.      "Unit 7 $NO_x$ Exceedance" shall, for the purposes of Section V.B. of this Decree only, mean any contiguous three-hour period, including all periods of Startup, Shutdown,

and Malfunction, in which the average emissions of $NO_x$, as measured by a continuous emission monitoring system ("CEMS"), exceed 0.70 lb of $NO_x$/mmBTU heat input;

ee.     "Unit 7 $SO_2$ Exceedance" shall, for the purposes of Section V.B. of this Decree only, mean any contiguous three hour period, including all periods of Startup, Shutdown, and Malfunction, in which the average emissions of $SO_2$, as measured by a CEMS, exceed 1.20 lb of $SO_2$/mmBTU heat input;

ff.     "Unit 8 $NO_x$ Exceedance" shall, for the purposes of Section V.B. of this Decree only, mean any contiguous 24-hour period, including all periods of Startup, Shutdown, and Malfunction, in which the average emissions of $NO_x$, as measured by a CEMS, exceed 0.24 lb of $NO_x$/mmBTU heat input;

gg.     "Unit 8 Opacity Exceedance" shall, for the purposes of Section V.B. of this Decree only, mean any six-minute block opacity average, including all periods of Startup, Shutdown, and Malfunction, as determined by the COMS for Unit 8, which is greater than 10 percent;

hh.     "Unit 8 $SO_2$ Exceedance" shall, for the purposes of Section V.B. of this Decree only, mean any contiguous 24-hour period, including all periods of Startup, Shutdown, and Malfunction, in which the average emissions of $SO_2$, as measured by a CEMS, exceed 0.496 lb of $SO_2$/mmBTU heat input;

ii.     "United States" shall mean the United States of America, acting on behalf of EPA.

## IV.  CIVIL PENALTY

8.      Within 30 Days after the Effective Date of this Consent Decree, Defendant shall

pay the sum of $112,000 as a civil penalty, together with interest accruing from the date on

which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as

of the date of lodging.  Defendant shall pay the civil penalty due by FedWire Electronic Funds

Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be

provided to Defendant, following lodging of the Consent Decree, by the Financial Litigation

Unit of the U.S. Attorney's Office for the Eastern District of Michigan, 211 W. Fort Street, Suite

2001, Detroit, Michigan 48226, telephone number (313) 234-5005.  At the time of payment,

Defendant shall send a copy of the EFT authorization form and the EFT transaction record,

together with a transmittal letter, which shall state that the payment is for the civil penalty owed

pursuant to the Consent Decree in *United States v. City of Wyandotte* and shall reference the civil

action number and DOJ case number 90-5-2-1-09346, to the United States in accordance with

Section XVI of this Decree (Notices); by email to acctsreceivable.CINWD@epa.gov; and by

mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio  45268

9.      Defendant shall not deduct any penalties paid under this Decree pursuant to this

Section or Section X (Stipulated Penalties) in calculating its federal income tax.

## V.  COMPLIANCE REQUIREMENTS

10.      On the Effective Date of this Decree and continuing thereafter, the Defendant

shall continuously comply with all requirements of its Title V Renewable Operating Permit for

the Facility, the New Source Review Permit to Install, the applicable provisions of the Clean Air Act and the New Source Performance Standards promulgated thereunder, and the Michigan SIP.

11.    On the Effective Date of this Decree and continuing thereafter, the Defendant shall implement good coal handling practices at all times.  Good coal handling practices include, but are not limited to, compaction and appropriate reclamation methods to avoid feeding wet coal to Units 7 and 8.

12.    Beginning on the Effective Date of this Consent Decree, if Defendant's coal supply contract for Unit 8 does not require delivery of coal with a coal sulfur content of no greater than 1.2 pounds of $SO_2$ per million British thermal units ("lbs./mmBtu"), the Defendant shall store the coal to be burned in Unit 7 in an area separate from the coal to be burned in Unit 8, to ensure that the coal piles are not blended or mixed prior to being fed to Units 7 and/or 8. Defendant shall verify the sulfur content of the coal in each delivery of coal pursuant to the coal supply contract for Unit 8, and report such content in accordance with Section IX of this Consent Decree (Reporting Requirements).

13.    Within 180 days from the Effective Date of this Decree, if the Defendant does not obtain a coal supply contract for Unit 8 that requires delivery of coal with a coal sulfur content of no greater than 1.2 lbs./mmBtu of $SO_2$, the Defendant shall construct and use a wall, ten feet in height, between the coal piles for Unit 7 and Unit 8 to separate those coal piles and prevent the coal in those piles from being mixed, in accordance with Paragraph 12.

**A. Phase I Compliance Requirements.**

    **i.** <u>Unit 7</u>

14.    Beginning on the Effective Date of this Decree, the Defendant shall continuously operate the ESP serving Unit 7 at the Facility consistent with the manufacturer's specifications, the operational design and maintenance limitations of Unit 7, any improvements to the ESP already implemented by Wyandotte, and good engineering and air pollution control practices for minimizing emissions.  Defendant shall, at a minimum: (a) energize each section of the ESP, regardless of whether that action is needed to comply with opacity limits; (b) maintain the energy or power levels delivered to the ESP to achieve the greatest possible removal of PM and the greatest possible reduction in opacity levels; (c) make best efforts to expeditiously repair and return to service transformer-rectifier sets when they fail; (d) inspect for, and schedule for repair, any openings in ESP casings and ductwork to minimize air leakage; and (e) optimize the plate-cleaning and discharge-electrode-cleaning systems for the ESP by varying the cycle time, cycle frequency, rapper-vibrator intensity, and number of strikes per cleaning event of the ESP to minimize PM emissions and opacity.

15.    Beginning on the Effective Date of this Decree, Defendant shall install and operate an Air-Side Soot Blower on Unit 7 to maximize PM removal effectiveness and minimize opacity emissions to the maximum extent practicable and to achieve and maintain continuous compliance with the requirements of the Title V Renewable Operating Permit.  Defendant shall thereafter operate the Air-Side Soot Blower consistent with manufacturer's specifications, the operational design and maintenance limitations of Unit 7, and good engineering and air pollution control practices for minimizing emissions.

11

16.     Within 40 months of the Effective Date, Defendant shall install and continuously operate a Baghouse at Unit 7 including during periods of Startup, Shutdown, and Malfunction, and consistent with good engineering and air pollution control practices for minimizing emissions.  Within 26 months of the Effective Date, the Defendant, in accordance with Section XVI of this Consent Decree (Notices), shall provide EPA with a copy of the design specifications for the Baghouse, including the guaranteed and/or anticipated outlet emission rate.

17.     On the same date that Defendant is required to install and continuously operate the Baghouse at Unit 7 as required in Paragraph 16, Defendant shall achieve and maintain continuous compliance with a PM emission rate of 0.015 lb. of PM/mmBtu heat input at Unit 7. Defendant shall measure compliance with the PM emission rate of 0.015 lb. of PM/mmBtu heat input by conducting a stack test in accordance with EPA Method 5B within 90 Days of the date by which the Defendant is required to install and continuously operate the Baghouse and at least once every 12 months thereafter.

18.     Beginning on the Effective Date of this Decree, Defendant shall have installed and commenced continuous operation of new Low $NO_x$ Burners at Unit 7 that achieve $NO_x$ reductions consistent with current Low $NO_x$ Burner technology.  Thereafter, Defendant shall continuously operate the Low $NO_x$ Burner(s) consistent with the manufacturer's specifications, the operational design and maintenance limitations of Unit 7, and good engineering and air pollution control practices for minimizing emissions.

19.     Beginning on the Effective Date of this Decree, Defendant shall install and continuously operate Separated Over-Fire Air at Unit 7, consistent with the manufacturer's specifications, the operational design and maintenance limitations of Unit 7, and good

12

engineering and air pollution control practices for minimizing emissions.  Thereafter, Defendant shall continuously operate Separated Over-Fire Air consistent with the manufacturer's specifications, the operational design and maintenance limitations of Unit 7, and good engineering and air pollution control practices for minimizing emissions.

   **ii.** <u>**Unit 8**</u>

  20. Beginning on the Effective Date and continuing thereafter, the Defendant shall continuously operate the Baghouse serving Unit 8 at all times including periods of Startup, Shutdown, and Malfunction, and consistent with good engineering and air pollution control practices for minimizing emissions.

  21. Beginning on the Effective Date and continuing thereafter, the Defendant shall continuously operate the lime injection system identified in its Title V Renewable Operating Permit for controlling $SO_2$ emissions from Unit 8, consistent with the manufacturer's specifications, the operational design and maintenance limitations of Unit 8, and good engineering and air pollution control practices for minimizing emissions.  Within 240 Days after the Effective Date, to minimize emissions to greatest extent practicable, the Defendant shall install and continuously use a covered silo sufficient to store and keep dry all lime used in the lime injection system.

  **B.**  **Phase II Compliance Requirements.**

   **i.** <u>**Unit 7**</u>

  22. Defendant shall install and continuously operate a coal dryer at Unit 7, if:

    a.  After 12 months following the date on which the Baghouse at Unit 7 is placed in operation, and prior to termination of this Decree in accordance with Section XX

(Termination), the duration of the Defendant's Unit 7 Opacity Exceedances is 1% or more of total operating time during any calendar year; or

    b.  After 6 months following the date on which the Baghouse at Unit 7 is placed in operation, and prior to termination of this Decree in accordance with Section XX (Termination), the duration of the Defendant's Unit 7 Opacity Exceedances is 2% or more of total operating time during any calendar quarter.

    Defendant shall install and commence continuous operation of the coal dryer within 365 days of submitting, pursuant to Section IX (Reporting Requirements), an Excess Emissions Report that meets the conditions of subparagraph (a) or (b) of this paragraph.  Defendant shall continuously operate the coal dryer so as to achieve a coal moisture content of no greater than 12.5% prior to feeding coal from the storage area to Unit 7.  Defendant shall measure the coal moisture content of a grab sample of coal exiting the coal dryer and prior to being fed to Unit 7 at least once every 30 Days to determine whether the moisture requirement of this Paragraph has been met.  Defendant shall report the moisture content of each sample in accordance with Section IX of this Decree (Reporting Requirements).  Nothing in this Paragraph is intended to waive the United States' right to demand stipulated penalties for any violations of any requirement of Defendant's Title V Renewable Operating Permit or any other requirement of this Consent Decree.

    23.  Defendant shall install and continuously operate a Dry Sorbent Injection System on Unit 7 consistent with manufacturer's specifications, the operational design and maintenance limitations of Unit 7 and good engineering and air pollution control practices for minimizing emissions if:

a.      After 18 months from the Effective Date, and prior to termination of this Decree in accordance with Section XX (Termination), the duration of the Defendant's Unit 7 $SO_2$ Exceedances is 1% or more of total operating time during any calendar year; or

b.      After 12 months from the Effective Date, and prior to termination of this Decree in accordance with Section XX (Termination), the duration of the Defendant's Unit 7 $SO_2$ Exceedances is 2% or more of total operating time during any calendar quarter.

Defendant shall install and commence continuous operation of the Dry Sorbent Injection System within 365 Days of submitting to EPA, pursuant to Section IX (Reporting Requirements), an Excess Emissions Report that meets the conditions of subparagraphs (a) or (b) of this paragraph.  Defendant shall not be required to install the Dry Sorbent Injection System until 365 Days after the Baghouse begins operation.  Defendant shall design the Dry Sorbent Injection System to achieve continuous compliance with the Title V Renewable Operating Permit and to achieve, on a continuous basis, at least 50% removal of all $SO_2$ from flue gas exiting the stack at Unit 7, as measured from the Title V Renewable Operating Permit emission limit for $SO_2$ for Unit 7.  For example, if the current permitted limit for $SO_2$ in the Title V Renewable Operating Permit is 1.20 lbs./MMBtu as a 3-hour average, then the dry sorbent injection system must be designed to achieve, on a continuous basis, 0.60 lb./MMBtu as a 3-hour average.   At least 60 Days prior to installation, Defendant, in accordance with Section XVI of this Consent Decree (Notices), shall provide EPA with a copy of the design specifications for the Dry Sorbent Injection System, including the guaranteed maximum design removal efficiency and outlet emission rate.   Defendant shall conduct one performance test within 90 Days of installation of the Dry Sorbent Injection System to verify that Defendant has achieved the design

15

requirement of this Paragraph, and shall submit the results of that test to EPA within 30 Days

thereafter in accordance with Section XVI of this Consent Decree (Notices).  Nothing in this

Paragraph is intended to waive the United States' right to demand stipulated penalties for any

violations of any requirement of Defendant's Title V Renewable Operating Permit or any other

requirement of this Consent Decree.

24.     Defendant shall install and continuously operate an SNCR on Unit 7 consistent

with the manufacturer's specifications, the operational design and maintenance limitations of

Unit 7, and good engineering and air pollution control practices for minimizing emissions, if:

a.      After 12 months from the Effective Date and prior to termination of this

Decree in accordance with Section XX (Termination), the duration of the Defendant's Unit 7

$NO_x$ Exceedances is 1% or more of total operating time during any calendar year; or

b.      After 6 months from the Effective Date and prior to termination of this

Decree in accordance with Section XX (Termination), the duration of the Defendant's Unit 7

$NO_x$ Exceedances is 2% or more of total operating time during any calendar quarter.

Defendant shall install and commence continuous operation of the SNCR within 16

months of submitting to EPA, pursuant to Section IX (Reporting Requirements), an Excess

Emissions Report that meets the conditions of subparagraph (a) or (b) of this paragraph.

Defendant shall design the SNCR to achieve continuous compliance with the Title V Renewable

Operating Permit and to achieve, on a continuous basis, at least 50% removal of all $NO_x$ from

flue gas exiting the stack at Unit 7, as measured from the Title V Renewable Operating Permit

emission limit for $NO_x$ for Unit 7.  For example, if the current permitted limit for $NO_x$ in the

Title V Renewable Operating Permit is 0.70 lb./MMBtu as a 3-hour average, then the SNCR

16

must be designed to achieve, on a continuous basis, 0.35 lb./MMBtu as a 3-hour average.  At least 60 Days prior to installation, Defendant, in accordance with Section XVI of this Consent Decree (Notices), shall provide EPA with a copy of the design specifications, including the guaranteed maximum design removal efficiency and outlet emission rate, for the SNCR. Defendant shall conduct one performance test within 90 Days of installation of the SNCR to verify that Defendant has achieved the design requirement of this Paragraph, and shall submit the results of that test to EPA within 30 Days thereafter in accordance with Section XVI of this Consent Decree (Notices).  Nothing in this Paragraph is intended to waive the United States' right to demand stipulated penalties for any violations of any requirement of Defendant's Title V Renewable Operating Permit or any other requirement of this Consent Decree.

### ii.  **Unit 8**

25.     Defendant shall prepare and submit to EPA, pursuant to Section XVI of this Decree (Notices),  a Baghouse Upgrade Analysis for Unit 8 and a proposed schedule for implementing improvements to the Baghouse in accordance with this Paragraph 25 if:

a.      After 12 months from the Effective Date and prior to termination of this Decree in accordance with Section XX (Termination), the duration of Defendant's Unit 8 Opacity Exceedances is 1% or more of total operating time during any calendar year;

b.      After 6 months from the Effective Date and prior to termination of this Decree in accordance with Section XX (Termination), the duration of Defendant's Unit 8 Opacity Exceedances is 2% or more of total operating time during any calendar quarter.

Defendant shall prepare and submit to EPA, pursuant to Section XVI of this Decree (Notices), the Baghouse Upgrade Analysis within 120 Days of submitting to EPA, pursuant to

17

Section IX (Reporting Requirements), an Excess Emissions Report that meets the conditions of subparagraph (a) or (b) of this paragraph.  The Baghouse Upgrade Analysis shall include proposed improvements to the Baghouse to enhance its capacity to remove PM and reduce opacity and to achieve continuous compliance with the Title V Renewable Operating Permit. EPA shall review the Baghouse Upgrade Analysis pursuant to Section VII of this Decree (Review and Approval of Submittals).  Upon approval of the Baghouse Upgrade Analysis by EPA, Defendant shall implement measures required pursuant to EPA's approval and shall achieve continuous compliance with the Title V Renewable Operating Permit.  Nothing in this Paragraph is intended to waive the United States' right to demand stipulated penalties for any violations of any requirement of Defendant's Title V Renewable Operating Permit or any other requirement of this Consent Decree.

26.     Defendant shall prepare and submit to EPA, pursuant to Section XVI of this Decree (Notices), a Lime Injection System Upgrade Analysis and a proposed schedule, not to exceed one year, for implementation of improvements to the lime injection system in accordance with this Paragraph 26 if:

a.     After 12 months from the Effective Date and prior to termination of this Decree in accordance with Section XX (Termination), the duration of Defendant's Unit 8 $SO_2$ Exceedances is 1% or more of total operating time during any calendar year; or

b.     After 6 months from the Effective Date and prior to termination of this Decree in accordance with Section XX (Termination), the duration of Defendant's Unit 8 $SO_2$ Exceedances is 2% or more of total operating time during any calendar quarter.

Defendant shall submit to EPA the Lime Injection System Upgrade Analysis pursuant to Section XVI of this Consent Decree (Notices) within 120 Days of submitting to EPA, pursuant to Section IX (Reporting Requirements), an Excess Emissions Report that meets the conditions of subparagraph (a) or (b) of this paragraph.  The Lime Injection System Upgrade Analysis shall include proposed improvements to the lime injection system at Unit 8, including but not limited to increased lime injection rates, enhanced lime reactivity and other measures capable of achieving, on a continuous basis, at least an additional 25% removal of $SO_2$ from the flue gas exiting the stack at Unit 8 than that achievable by the current lime injection system design, and shall undertake any other measures deemed necessary to ensure continuous compliance with Defendant's Title V Renewable Operating Permit.   Immediately upon submittal to EPA, the Defendant shall implement the measures proposed in the Lime Injection System Upgrade Analysis on the schedule proposed therein to achieve continuous compliance with the Title V Renewable Operating Permit.  Defendant shall conduct one performance test of the lime injection system within 90 Days of completion of the improvements scheduled in its Lime Injection System Upgrade Analysis to verify that Defendant has achieved the design requirement of this Paragraph, and shall submit the results of that test to EPA within 30 Days thereafter in accordance with Section XVI of this Consent Decree (Notices).  Nothing in this Paragraph is intended to waive the United States' right to demand stipulated penalties for any violations of any requirement of Defendant's Title V Renewable Operating Permit or any other requirement of this Consent Decree.

27.     Defendant shall install and continuously operate an SNCR, on Unit 8 consistent with manufacturer's specifications, the operational design and maintenance limitations of Unit 8, and good engineering and air pollution control practices for minimizing emissions if:

a.     After 12 months from the Effective Date and prior to termination of this Decree in accordance with Section XX (Termination), the duration of Defendant's Unit 8 $NO_x$ Exceedances is 1% or more of total operating time during any calendar year; or

b.     After 6 months from the Effective Date and prior to termination of this Decree in accordance with Section XX (Termination), the duration of Defendant's Unit 8 $NO_x$ Exceedances is 2% or more of total operating time during any calendar quarter.

Defendant shall install and commence continuous operation of the SNCR within 16 months of submitting to EPA, pursuant to Section IX (Reporting Requirements), an Excess Emissions Report that meets the conditions of subparagraph (a) or (b) of this paragraph. Defendant shall design the SNCR to achieve continuous compliance with the Title V Renewable Operating Permit and to achieve, on a continuous basis, at least 50% removal of all $NO_x$ from flue gas exiting the stack at Unit 8, as measured from the Title V Renewable Operating Permit emission limit for $NO_x$ for Unit 8.  For example, if the current permitted limit for $NO_x$ in the Title V Renewable Operating Permit is 0.24 lb./MMBtu as a 24-hour average, then the SNCR must be designed to achieve, on a continuous basis, 0.12 lb./MMBtu as a 24-hour average.  At least 90 Days prior to installation, Defendant, in accordance with Section XVI of this Consent Decree (Notices), shall provide EPA with a copy of the design specifications of the SNCR, including its guaranteed or anticipated maximum design removal efficiency and outlet emission rate. Nothing in this Paragraph is intended to waive the United States' right to demand stipulated penalties for

20

any violations of any requirement of Defendant's Title V Renewable Operating Permit or any

other requirement of this Consent Decree.

## VI.  SUPPLEMENTAL ENVIRONMENTAL PROJECT

28.     Defendant shall implement a Supplemental Environmental Project ("SEP"), the

Fleet Conversion and Fueling Station Project, in accordance with all provisions of the Appendix

to this Consent Decree.  The SEP shall be completed in accordance with the schedule set forth in

the Appendix.  Defendant is responsible for the satisfactory completion of the SEP in accordance

with the requirements of this Decree.  Defendant may use contractors or consultants in planning

and implementing the SEP.

29.     With regard to the SEP, Defendant certifies the truth and accuracy of each of the

following:

a.     that all cost information provided to EPA in connection with EPA's

approval of the SEP is complete and accurate and that Defendant in good faith estimates that the

cost to implement the SEP is $210,000;

b.     that, as of the date of executing this Decree, Defendant is not required to

perform or develop the SEP by any federal, state, or local law or regulation and is not required to

perform or develop the SEP by agreement, grant, or as injunctive relief awarded in any other

action in any forum;

c.     that the SEP is not a project that Defendant was planning or intending to

construct, perform, or implement other than in settlement of the claims resolved in this Decree;

d.     that Defendant has not received and will not receive credit for the SEP in

any other enforcement action; and

21

e.     that Defendant will not receive any reimbursement for any portion of the SEP from any other person.

31.     <u>SEP Completion Report</u>

a.     Within 30 Days after the date set for completion of the SEP, Defendant shall submit a SEP Completion Report to the United States, in accordance with Section XVI of this Consent Decree (Notices).  The SEP Completion Report shall contain the following information:

i.     a detailed description of the SEP as implemented;

ii.     a description of any problems encountered in completing the SEP and the solutions thereto;

iii.     an itemized list of all eligible SEP costs expended;

iv.     certification that the SEP has been fully implemented pursuant to the provisions of this Decree; and

v.     a description of the environmental and public health benefits resulting from implementation of the SEP (with a quantification of the benefits and pollutant reductions, if feasible).

b.     EPA may, in its sole discretion, require information in addition to that described in this Paragraph, in order to evaluate Defendant's completion report.

32.     After receiving the SEP Completion Report, the United States shall notify Defendant whether or not Defendant has satisfactorily completed the SEP.  If Defendant has not completed the SEP in accordance with this Consent Decree, stipulated penalties may be assessed under Section X of this Consent Decree.

22

33.     Disputes concerning the satisfactory performance of the SEP and the amount of eligible SEP costs may be resolved under Section XII of this Decree (Dispute Resolution).  No other disputes arising under this Section shall be subject to Dispute Resolution.

34.     Each submission required under this Section shall be signed by an official with knowledge of the SEP and shall bear the certification language set forth in Paragraph 45.

35.     Any public statement, oral or written, in print, film, or other media, made by Defendant making reference to the SEP under this Decree shall include the following language: "This project was undertaken in connection with the settlement of an enforcement action, United States v. City of Wyandotte, taken on behalf of the U.S. Environmental Protection Agency under the Clean Air Act."

36.     For federal income tax purposes, Defendant agrees that it will neither capitalize into inventory or basis nor deduct any costs or expenditures incurred in performing the SEP.

## VII.  REVIEW AND APPROVAL OF SUBMITTALS

37.     After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Decree, EPA shall in writing:  a) approve the submission; b) approve the submission upon specified conditions; c) approve part of the submission and disapprove the remainder; or d) disapprove the submission.

38.     If the submission is approved pursuant to Subparagraph 37.a, Defendant shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the submission is conditionally approved or approved only in part, pursuant to subparagraph 37.b or .c, Defendant shall, upon written direction from EPA take all actions required by the approved plan, report, or

23

other item that EPA determines are technically severable from any disapproved portions, subject to Defendant's right to dispute only the specified conditions or the disapproved portions, under Section XII of this Decree (Dispute Resolution).

39. If the submission is disapproved in whole or in part pursuant to subparagraph 37.c or .d, Defendant shall, within 45 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is approved in whole or in part, Defendant shall proceed in accordance with the preceding Paragraph.

40. Any stipulated penalties applicable to the original submission, as provided in Section X of this Decree, shall accrue during the 45-Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendant's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

41. If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Defendant to correct any deficiencies in accordance with the preceding Paragraphs, or may itself correct any deficiencies, subject to Defendant's right to invoke Dispute Resolution and the right of EPA to seek stipulated penalties as provided in the preceding Paragraphs.

## VIII.  PERMITS

42.     Where any compliance obligation under this Decree requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendant may seek relief under the provisions of Section XI of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

## IX.  REPORTING REQUIREMENTS

43.     Defendant shall submit the following reports:

a.     Within 30 Days after the end of each calendar quarter after the Effective Date of this Consent Decree, until termination of this Decree pursuant to Section XX, Defendant shall submit a quarterly report for the preceding quarter that shall include:  Defendant's Excess Emissions Report for that calendar quarter; the status of all work completed or ongoing pursuant to the requirements of Section V of this Consent Decree, with any problems encountered or anticipated, together with implemented or proposed solutions; the status of all permit applications related to this Consent Decree; a description of the coal handling methods employed during the calendar quarter, including but not limited to those required under Section V of this Consent Decree, the sulfur content of the coal delivered for Unit 8 pursuant to Paragraph 12, the coal moisture content of the coal fed to Unit 7 after application of the coal dryer pursuant to Paragraph 22, as applicable, any planned or unplanned outages which occurred during the

25

quarter and any planned outages scheduled for the following quarter.  The report shall also include a description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.

b.     Each Excess Emissions Report shall include, at a minimum, the following information:

i.     The magnitude of excess emissions computed in accordance with 40 C.F.R. § 60.13(h), any conversion factor(s) used, the date and time of commencement and cessation of each time period of excess emissions, and the process operating time during the reporting period;

ii.     Specific identification of each period of excess emissions that occurred during Startups, Shutdowns, and Malfunctions of the affected facility, as "affected facility" is defined in 40 C.F.R. § 60.2, the nature and cause of any Malfunction (if known), the corrective action taken and/or preventative measures adopted;

iii.     The date and time of each period during which the continuous monitoring system was inoperative except for zero and span checks, and identifying the nature of the system repairs or adjustments; and

iv.     A statement, if applicable, indicating that no excess emissions have occurred or the continuous monitoring systems have not been inoperative, repaired, or adjusted.

c.     If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, the Defendant shall notify the United States of such violation and its likely duration, in writing, within ten working Days of the Day Defendant first

26

becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report. Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendant becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section XI of this Consent Decree (Force Majeure).

d.     Whenever any violation of this Consent Decree or of any applicable permits or any other event affecting Defendant's performance under this Decree, or the performance of its Facility, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Subparagraph (c).

44.    All reports shall be submitted to the persons designated in Section XVI of this Consent Decree (Notices).

45.    Each report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there

are significant penalties for submitting false information, including the
possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where

compliance would be impractical.

46.     Satisfaction of the reporting requirements of this Consent Decree does not relieve

Defendant of any reporting obligations required by the Clean Air Act or implementing

regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

47.     Any information provided pursuant to this Consent Decree may be used by the

United States in any proceeding to enforce the provisions of this Consent Decree and as

otherwise permitted by law.

## X.  <u>STIPULATED PENALTIES</u>

48.     Defendant shall be liable for stipulated penalties to the United States for

violations of this Consent Decree as specified in Table 1 below, unless excused under Section XI

(Force Majeure).  A violation includes failing to perform any obligation required by the terms of

this Decree, including any work plan or schedule approved under this Decree, according to all

applicable requirements of this Decree and within the specified time schedules established by or

approved under this Decree.

<u>Table 1</u>

| Consent Decree Requirement | Consent Decree Paragraph or Section Violated | Stipulated Penalty |
|---|---|---|
| Failure to pay the Civil Penalty | Section IV, ¶ 8 | $3,000 per day for each such day of failure |

28

| Violation of any provision of the Title V Renewable Operating Permit | Section V, ¶ 10 | $1,500 per day for each such violation |
|---|---|---|
| Violation of the requirement to implement good coal handing practices | Section V, ¶ 11 | $500 per day for each such violation |
| Violation of the requirement to store coal for Units 7 and 8 in separate storage structures and/or the prohibition on burning coal stored for Unit 8 in Unit 7 | Section V, ¶ 12 | $500 per day for each such violation |
| Violation of any Phase I Compliance Requirement at Unit 7 | Section V.A.i, ¶¶ 14-19 | $1,500 per day for each such violation |
| Violation of any Phase I Compliance Requirement at Unit 8 | Section V.A.ii, ¶¶ 20-21 | $1,500 per day for each such violation |
| Violation of any Phase II Compliance Requirement at Unit 7 | Section V.B.i, ¶¶ 22-24 | $3,000 per day for each such violation |
| Violation of any Phase II Compliance Requirement at Unit 8 | Section V.B.ii, ¶¶ 25-27 | $3,000 per day for each such violation |
| Violation of any reporting and/or record-keeping requirement required under this Consent Decree | Section IX, ¶¶ 43-45 | $1,000 per day for each such violation |
| Any other violation of the Decree | All other Consent Decree Paragraphs | $1,000 per day for each violation |
| Violation of any Requirement to Implement the Supplemental Environmental Project | Section VI, ¶¶ 28-36 | $1,500 per day for each such violation |

49.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue

29

to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree. Defendant shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

50.     The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

51.     Stipulated penalties shall continue to accrue as provided in Paragraph 48 during any Dispute Resolution, but need not be paid until the following:

a.     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendant shall pay to the United States accrued penalties determined to be owing, together with interest, within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay to the United States all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in Subparagraph c, below.

c.     If any Party appeals the District Court's decision, and the decision is affirmed in whole or in part, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

52.     Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 81, except that the transmittal

letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

53.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

54.     Subject to the provisions of Section XIV of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Consent Decree or other applicable law.  Where a violation of this Consent Decree is also a violation of the Title V Renewable Operating Permit or the Michigan SIP, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## XI.  **FORCE MAJEURE**

55.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the

greatest extent possible.  Defendant's financial inability to perform any obligation under this Consent Decree shall not be considered a "force majeure" event.

56.      If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to EPA, within 4 days of when Defendant first knew that the event might cause a delay.  Within seven (7) Days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure event.  Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

57.      If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those

32

obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

58.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

59.     If Defendant elects to invoke the dispute resolution procedures set forth in Section XII (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice.  In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 55 and 56, above.  If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## XII.  DISPUTE RESOLUTION

60.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Defendant's failure to initiate resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

61.     <u>Informal Dispute Resolution</u>.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

62.     <u>Formal Dispute Resolution</u>.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

63.     The United States shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

64.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XVI of this Consent Decree (Notices), a

34

motion requesting judicial resolution of the dispute.  The motion must be filed within 21 Days of Defendant's receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

66.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules or by leave of the Court.

66.     Standard of Review.

a.      Disputes Concerning Matters Accorded Record Review.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 60 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.      Other Disputes.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 60, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

67.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 51.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section X (Stipulated Penalties).

### XIII.  INFORMATION COLLECTION AND RETENTION

68.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

     a.      monitor the progress of activities required under this Consent Decree;

     b.      verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

     c.      obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

     d.      obtain documentary evidence, including photographs and similar data; and

     e.      assess Defendant's compliance with this Consent Decree.

69.     Upon request, Defendant shall provide EPA or its authorized representative splits of any samples taken by Defendant.  Upon request, EPA shall provide Defendant splits of any samples taken by EPA.

70.     Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

71.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA.  Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendant asserts such a privilege, it shall provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendant.  However, no

37

documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

72.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

73.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIV.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

74.     This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the Date of Lodging.

75.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 74.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 74.  The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by,

Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

76.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facility or Defendant's violations, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 74 of this Section.

77.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 42 U.S.C. § 7401 *et seq.*, or with any other provisions of federal, state, or local laws, regulations, or permits.

78.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the

39

rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

79.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XV.  COSTS

80.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XVI.  NOTICES

81.     Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

To the United States:

    Via U.S. Postal Service:

    Chief, Environmental Enforcement Section
    Environment and Natural Resources Division
    U.S. Department of Justice
    Box 7611 Ben Franklin Station
    Washington, D.C.  20044-7611
    Re: DOJ No. 90-5-2-1-09346

Via Courier:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
ENRD Mailroom, Rm. 2121
601 D Street, NW
Washington, DC 20004
Re:  DOJ No. 90-5-2-1-09346

and

To EPA:

Compliance Tracker
U.S. Environmental Protection Agency
Region 5, (AE-17J)
77 W. Jackson Blvd.
Chicago, IL 60604

Sabrina Argentieri
U.S. Environmental Protection Agency
Region 5 (R-14)
77 W. Jackson Blvd.
Chicago, IL 60604

To Defendant(s):

Melanie McCoy
General Manager
City of Wyandotte Department of Municipal Service
3005 Biddle Avenue
Wyandotte, MI 48192

and

Karl A. Karg, Esq.
Latham and Watkins, LLP
233 S. Wacker Dr., Suite 5800
Chicago, IL 60606

82.      Any Party may, by written notice to the other Parties, change its designated notice

recipient or notice address provided above.

41

83.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVII.  **EFFECTIVE DATE**

84.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.  In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the obligations set forth in this Decree shall terminate.

## XVIII.  **RETENTION OF JURISDICTION**

85.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XII and XIX, or effectuating or enforcing compliance with the terms of this Decree.

## XIX.  **MODIFICATION**

86.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties. Defendant may propose the substitution of alternative controls to meet the requirements of Sections V and, upon written approval by EPA, such alternative controls may be substituted for the control requirements at Section V, as specified in EPA's written approval, if applicable.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

87.     Any disputes concerning modification of this Decree shall be resolved pursuant to
Section XII of this Decree (Dispute Resolution), provided, however, that, instead of the burden
of proof provided by Paragraph 66, the Party seeking the modification bears the burden of
demonstrating that it is entitled to the requested modification in accordance with Federal Rule of
Civil Procedure 60(b).

## XX.  **TERMINATION**

88.     After Defendant has completed the requirements of Section V (Compliance
Requirements) of this Decree, has thereafter maintained continuous satisfactory compliance with
this Consent Decree and the Title V Renewable Operating Permit for a period of two years, and
has paid the civil penalty and any accrued stipulated penalties as required by this Consent
Decree, Defendant may serve upon the United States a Request for Termination, stating that
Defendant has satisfied those requirements, together with all necessary supporting
documentation.

89.     Following receipt by the United States of Defendant's Request for Termination,
the Parties shall confer informally concerning the Request and any disagreement that the Parties
may have as to whether Defendant has satisfactorily complied with the requirements for
termination of this Consent Decree.  If the United States agrees that the Decree may be
terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the
Decree.

90.     If the United States does not agree that the Decree may be terminated, Defendant
may thereafter invoke Dispute Resolution under Section XII of this Decree.  However,
Defendant shall not seek Dispute Resolution of any dispute regarding termination, under

43

Paragraph 60 of Section XII (Dispute Resolution), until 90 Days after service of its Request for Termination.

### XXI.  <u>PUBLIC PARTICIPATION</u>

91.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

### XXII.  <u>SIGNATORIES/SERVICE</u>

92.     Each undersigned representative of Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

93.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXIII.  <u>INTEGRATION</u>

94.     This Consent Decree, together with its Appendix, constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than deliverables that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXIV.  <u>FINAL JUDGMENT</u>

95.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

Dated and entered this __ day of _____, ____.


_____
UNITED STATES DISTRICT JUDGE
Eastern District of Michigan

45

Signature Page for *United States of America v. City of Wyandotte* Consent Decree

FOR THE UNITED STATES OF AMERICA:

Date:   5/13/11

W. BENJAMIN FISHEROW
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources
 Division
United States Department of Justice

Date:   5/18/11

GREGORY L. SUKYS
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources
Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
(202) 514-2068 (Tel.)
(202) 616-6584 (Fax)
greg.sukys@usdoj.gov

Signature Page for *United States of America v. City of Wyandotte* Consent Decree

FOR THE CITY OF WYANDOTTE:

Date: 4 | 21 | 11

Melanie McCoy
General Manager
City of Wyandotte Department of Municipal
Service
3005 Biddle Avenue
Wyandotte, MI 48192

If different from above, the following is the name and address of City of Wyandotte's agent for service and the name and address of the City of Wyandotte's counsel. Counsel may act as agent for service.

Agent for service and Counsel:

Karl A. Karg, Esq.
Latham and Watkins, LLP
233 S. Wacker Dr., Suite 5800
Chicago, IL 60606

The City of Wyandotte shall notify the United States Department of Justice of any change in the identity or address of the City, its agent for service, or its counsel.

Signature Page for *United States of America v. City of Wyandotte* Consent Decree

 

                                          BARBARA L. MCQUADE
                                          United States Attorney
                                          Eastern District of Michigan

Date: _____    s/Ellen Christensen
                                          ELLEN CHRISTENSEN
                                          Assistant U.S. Attorney
                                          211 W. Fort Street,
                                          Suite 2001
                                          Detroit, Michigan  48226
                                          (313) 226-9112
                                          P29574

Signature Page for *United States of America v. City of Wyandotte* Consent Decree

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

Date: 5/17/11

SUSAN HEDMAN
Regional Administrator
U.S. Environmental
   Protection Agency
Region 5

Date: 5/11/11

ROBERT A. KAPLAN
Regional Counsel
United State Environmental
   Protection Agency
Region 5

47

Signature Page for *United States of America v. City of Wyandotte* Consent Decree

FOR THE CITY OF WYANDOTTE:

Date: 4/21/11

Melanie McCoy
General Manager
City of Wyandotte Department of Municipal
Service
3005 Biddle Avenue
Wyandotte, MI 48192

If different from above, the following is the name and address of City of Wyandotte's agent for service and the name and address of the City of Wyandotte's counsel. Counsel may act as agent for service.

Agent for service and Counsel:

Karl A. Karg, Esq.
Latham and Watkins, LLP
233 S. Wacker Dr., Suite 5800
Chicago, IL 60606

The City of Wyandotte shall notify the United States Department of Justice of any change in the identity or address of the City, its agent for service, or its counsel.